UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| STAVROULA MICHAILIDIS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 21-CV-11405-AK |
| DEVIN L. POTVIN; | ) |
| ONE CALL JUNK HAUL, LLC; | ) |
| ONE CALL JUNK HAUL FRANCHISE, LLC; | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

**A. KELLEY, D.J.**

Plaintiff Stavroula Michailidis ("Plaintiff" or "Michailidis") has brought claims of negligence against Defendants Devin L. Potvin; One Call Junk Haul, LLC; and One Call Junk Haul Franchise, LLC (collectively, "Defendants"), seeking damages for personal injuries she allegedly suffered in a motor vehicle accident. [See Dkt. 1, ("Compl.")]. For the reasons set forth below, Defendants' Motion to Dismiss [Dkt. 10] is **GRANTED**, and the case is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

1

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff alleges that on September 25, 2020, she collided with Defendant Potvin's vehicle while driving on Pleasant Street in Bridgewater, Massachusetts. [Dkt. 1, Compl. at ¶¶ 7–9]. Plaintiff's claims Defendant Potvin's vehicle was owned by Defendants One Call Junk Haul, LLC and One Call Junk Haul Franchise, LLC [id. at ¶ 8], and that Defendant Potvin "negligently and/or carelessly, operat[ed] his/her vehicle in such a manner so as to rear-end Plaintiff's vehicle" [id. at ¶ 10]. The complaint goes on to state the collision was "not the result of any action or failure to act by Plaintiffs [sic]" [id. at ¶ 11], and that, "[a]s a result of the accident, Plaintiffs [sic] suffered serious, severe and permanent bodily injuries, including to the neck, shoulder and back" [id. at ¶ 12].

Plaintiff filed her Complaint on August 26, 2021, asserting federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. [Id. at ¶¶ 5–6]. Thereafter, on December 2, 2021, Defendants filed a Motion to Dismiss [Dkt. 10] and accompanying Memorandum of Law [Dkt. 11], in which they argue Plaintiff's Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for failure to meet the jurisdictional threshold required for diversity jurisdiction. Plaintiff submitted an untimely opposition filing[1] on December 23, 2021 [Dkt. 18], after which Defendants filed a Motion for Leave to File a Reply [Dkt. 19], which the Court granted on January 14, 2022 [Dkt. 22]. Defendants' Reply brief was subsequently docketed on January 24, 2022. [Dkt. 24].

---

[1] This Court is vested with "significant discretionary authority to set and enforce filing deadlines in accordance with the Federal Rules of Civil Procedure." Perez-Cordero v. Wal-Mart P.R., 440 F.3d 531, 533 (1st Cir. 2006). As such, and in light of Plaintiff's relatively brief delay in filing her opposition, as well as the delay's lack of any prejudicial effect on Defendants, the Court exercises its discretion here to excuse Plaintiff's untimeliness and to consider her opposition filing. See also Mitchell v. Mass. Dep't of Correction, 190 F. Supp. 2d 204, 216 (D. Mass. 2002) (refusing to deny a motion as untimely where party seeking denial "alleged no prejudice as a result" of the delay and there were no "adverse effects").

## II. DISCUSSION

### a. Legal Standard

Federal courts are of limited jurisdiction and may generally only adjudicate civil actions arising under federal laws, see 28 U.S.C. § 1331, and those where parties have complete diversity of state citizenship and the amount in controversy exceeds $75,000, see id. § 1332. "The existence of subject-matter jurisdiction 'is never presumed,'" Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (quoting Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)), and federal courts "have a duty to ensure that they are not called upon to adjudicate cases which in fact fall outside the jurisdiction conferred by Congress," Esquilín–Mendoza v. Don King Prods., Inc., 638 F.3d 1, 3 (1st Cir. 2011); see also CE Design Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014) (describing federal courts' "responsibility to police the border of federal jurisdiction").

The party asserting federal jurisdiction is responsible for establishing that such jurisdiction exists. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001). "[D]iversity jurisdiction requires complete diversity of citizenship as between all plaintiffs and all defendants,"[2] Connectu LLC v.

---

[2] The Court notes that, despite asserting federal jurisdiction based on diversity of citizenship, Plaintiff's Complaint [Dkt. 1, Compl.] does not adequately plead such. Plaintiff states she "is a resident of the State of Florida" [id. at ¶ 1], and later claims to be "a citizen of Florida" [id. at ¶ 5], but makes no specific allegation as to where she is *domiciled*, as is required for pleading party citizenship, see Bank One, Tex., N.A. v. Montle, 964 F.2d 48, 53 (1st Cir. 1992); Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008). The complaint is similarly silent as to Defendant Potvin's domicile, providing a Massachusetts address where he allegedly "resid[es]" [Compl. at ¶ 2], and later stating he "is a citizen of Massachusetts" [id. at ¶ 5].
    More importantly, Plaintiff only provides the "business address[es]" for each entity defendant [id. at ¶¶ 3–4] and a statement that "their principal place of business is in Massachusetts" [id. at ¶ 5]. Yet this is entirely inadequate for the purposes of pleading diversity jurisdiction, as the citizenship of limited liability companies "is determined by the citizenship of all of its members." D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra, 661 F.3d 124, 125 (1st Cir. 2011) (citation omitted), and Plaintiff's complaint says nothing as to the number, identities, or citizenship of any of the LLC defendants' members. Nevertheless, because the Court finds the jurisdictional issue of amount in controversy to be dispositive here, it need not delve further into whether complete diversity of citizenship exists between these parties.

Zuckerberg, 522 F.3d 82, 91 (1st Cir. 2008), and must involve an amount in controversy that "exceeds the sum or value of $75,000, exclusive of interests and costs," 28 U.S.C. § 1332.

When seeking entry to federal court through diversity jurisdiction, it is the plaintiff who bears the burden of establishing that their case meets the amount in controversy requirement prescribed by 28 U.S.C. § 1332. See CE Design Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014); Abdel–Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir.2012). Claims of federal subject matter jurisdiction must be "plausible on [their] face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), pursuant to federal pleading requirements, and when "initiat[ing] an action in federal court, the plaintiff knows or should know whether the claim surpasses the jurisdictional minimum," Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 4 (1st Cir. 1995) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290 (1938)).

"A plaintiff's good faith allegation of damages meeting the required amount in controversy is usually enough," CE Design, 755 F.3d at 43 (citing Abdel-Aleem, 665 F.3d at 41), and such amount "is usually assessed from the viewpoint of the plaintiff," id. (citing Miles v. Funk, 259 Fed.Appx. 335, 337 (1st Cir.2008) (per curiam) (unpublished)). Nevertheless, "where it appears 'to *a legal certainty* that the claim is really for less than the jurisdictional amount,' dismissal is required." CE Design, 755 F.3d at 43 (quoting Esquilín–Mendoza v. Don King Prods., Inc., 638 F.3d 1, 4 (1st Cir. 2011)); see also Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004); St. Paul Mercury, 303 U.S. at 288–89. "'[T]he question . . . is whether to anyone familiar with the applicable law this claim could objectively have been viewed as worth' more than the jurisdictional minimum." Abdel-Aleem, 665 F.3d at 41 (quoting Coventry Sewage, 71 F.3d at 6 (1st Cir.1995)) (quoting Jimenez Puig v. Avis Rent–A–Car Sys., 574 F.2d

4

37, 40 (1st Cir.1978)). This objective test is applied "by looking to the circumstances at the time the complaint is filed." Coventry Sewage, 71 F.3d at 4 (citing Thesleff v. Harvard Trust Co., 154 F.2d 732, 732 n. 1 (1st Cir.1946)).

Where, as here, Defendants have challenged Plaintiff's basis for asserting diversity jurisdiction, "'the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is *not* a legal certainty that the claim involves less than the jurisdictional amount.'" Abdel-Aleem, 665 F.3d at 42 (quoting Stewart, 356 F.3d at 338) (quoting Spielman, 251 F.3d at 5) (emphasis added). To do so, that party may submit affidavits or amended pleadings, see Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991), which the Court may consider on a motion to dismiss filed pursuant to Rule 12(b)(1), see Mahoney v. Colvin, No. CV 15-13023-NMG, 2016 WL 8839010, at *2 (D. Mass. Nov. 7, 2016), report and recommendation adopted, No. 15-CV-13023-NMG, 2017 WL 1538520 (D. Mass. Apr. 13, 2017) (citing Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996)). When considering such a motion, the Court "'must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff.'" Id. (quoting Aversa, 99 F.3d at 1210). Yet, as noted above, it "is not restricted to the pleadings [and] may consider extra-pleading materials . . . to resolve factual disputes concerning the existence of jurisdiction" Id. (citing Aversa, 99 F.3d at 1210).

### b. Analysis

Defendants argue they must prevail on their Motion to Dismiss [Dkt. 10] because Plaintiff's "allegations as to injuries and damages are non-specific, conclusory, and do nothing to establish her damages" [Dkt. 11 at 3] (citation omitted). This Court agrees. The Complaint in this

5

action is incredibly thin on details. In the six-paragraph "Facts" section [Dkt. 1, Compl. at ¶¶ 7–12], the only portion pertaining to Plaintiff's injuries states simply that, "[a]s a result of the accident, Plaintiff suffered serious, severe and permanent bodily injuries, including to the neck, shoulder and back, as set forth more fully below" [id. at ¶ 12]. Yet in the claims sections below, Plaintiff hardly provides any greater detail, instead making broad, conclusory, and conditional claims for various categories of damages. [Id. at ¶¶ 14–19, 23–28, 31–36, 40–45, 48–53].[3]

Regarding her injuries, there is no real additional detail added here, as Plaintiff simply states she "suffered various serious and permanent personal injuries and/or permanent serious disfigurement and/or aggravation of pre-existing conditions, including to the neck, shoulder and lower back, all to Plaintiff's great loss and detriment." [Id. at ¶¶ 14, 23, 31, 40, 48]. She then states she "has in the past, is presently and *may in the future* suffer great anguish, sickness and agony and will continue to suffer for an indefinite time into the future." [Id. at ¶¶ 15, 24, 32, 41, 49] (emphasis added). This uncertain language is repeated in the paragraphs describing how Plaintiff "*may in the future* undergo a great loss of earnings and/or earning capacity" [id. at ¶¶ 18, 27, 35, 44, 52] (emphasis added), and when she states she "has also incurred *or* will incur medical, rehabilitative and other related expenses for which she makes a claim for payment in the present action [id. at ¶¶ 19, 28, 36, 45, 53] (emphasis added). Essentially, the Complaint is rife with uncertainty about even the very existence of future damages, much less anything which could even begin to speak to their value.

Nevertheless, because Plaintiff's assertion of diversity jurisdiction has been challenged here, the Court looks to the information submitted in and attached to Plaintiff's opposition to that

---

[3] These paragraphs are included underneath each of Plaintiff's enumerated claims in her Complaint. While some vary slightly in wording from one section to the next, they are largely repeated under each count verbatim and such variations are minimal and non-substantive.

challenge. See Dep't of Recreation, 942 F.2d at 88; Mahoney v. Colvin, 2016 WL 8839010, at *2; Aversa, 99 F.3d at 1210. Those filings, however, are no more persuasive that Plaintiff's injuries will cost anything even close to the jurisdictional minimum. Plaintiff's opposition indicates she essentially suffered a shoulder injury, a "labral tear" on her right side. [Dkt. 18 at 1, 3–4]. It discusses no other injuries or types of damages, except for brief mention that the calculations contained therein "[do] not even consider pain and suffering of Plaintiff." [Id. at 4].[4] Plaintiff's opposition states her medical costs to date at the time of filing were only $9,811.53, yet that "it is anticipated that her medical expenses will only increase." [Id. at 3].

In purported support of these future costs—which would need to increase substantially to come even within the realm of the $75,000 jurisdictional minimum—Plaintiff has submitted two exhibits along with her opposition. [Dkt. 18-1; Dkt. 18-2]. The first is a report from an "Independent Medical Examination" conducted via videoconference by Dr. Adam T. Harder in September 2021. [Dkt. 18-1]. The second is a "Cost Projection" document submitted by a nurse, Alisa Dayanim, to Plaintiff's counsel just one day before her (late) opposition was filed with this Court. [Dkt. 18-2]. Ms. Dayanim does not appear to ever have examined or even met the Plaintiff; her submission simply refers to Dr. Harder's report, and purports to contain "the costs associated with future care requirements for Ms. Michailidis, as set forth by Dr. Harder." [Id. at 3].

However, Dr. Harder's report did not contain any cost estimates, and was highly conditional and uncertain even with regard to what types and degrees of treatment Plaintiff *might* require. [Dkt. 18-1]. Regarding "Permanency," Dr. Harder simply stated that Plaintiff "has not

---

[4] Moreover, the "personal property" damages alleged by Plaintiff in her Complaint to her vehicle, including costs of "storage fees and towing" [Compl. at ¶¶ 17, 26, 34, 43, 51], are neither discussed nor added up in her opposition filing—despite these ostensibly being rather easy, mathematical costs to calculate.

7

yet reached a medical end point in terms of her recovery." [Id. at 4]. Regarding future treatment, the only treatments Dr. Harder stated, without conditionals, that Plaintiff "*will* benefit from" (emphasis added), were "follow-up evaluation with orthopedics to reassess the status of her shoulder and to address her ongoing symptoms," "additional physical therapy directed at the right shoulder" which "typically take[s] the form of a 6 week program consisting of 12 sessions with transition to home exercise," and "a subacromial cortisone injection" which "*can* be repeated every three months on an as needed basis assuming efficacy." [Id.] (emphasis added). In addition to the conditionals contained therein, every other treatment recommendation in this section begins with the word "if" or is otherwise plainly dependent on the failure of such "conservative care efforts." [Id.]

Nevertheless, using Dr. Harder's report as a reference, Ms. Dayanim's "Cost Projection" for Plaintiff's future medical expenses assumes Plaintiff will require one visit to the orthopedist per year, monthly physical therapy, and 2–4 cortisone injections per year *for the rest of her life* (totaling $139,428.00)—and this is in addition to the costs of surgery and postoperative physical therapy (totaling $31,297.00). [Dkt. 18-2 at 4]. Ms. Dayanim's projection does note that "[t]herapeutic injections may be obviated with a successful surgical outcome" [id.], though it is unclear why such a success would not also obviate the need for the lifetime orthopedist visits and monthly physical therapy. In short, Ms. Dayanim's projection takes Dr. Harder's simple conclusion that Plaintiff has not yet reached a "medical endpoint" in treatment for this injury to the absolute extreme, and baselessly puts forth cost projections that would have Plaintiff requiring lifetime care for a shoulder injury—one for which, it is worth noting, Plaintiff had not even sought out follow-up care upon moving to Florida sometime after the accident [see Dkt. 18-1 at 3].

8

Plaintiff's opposition filings, including both Dr. Harder's report and Ms. Dayanim's cost projection, are all riddled with conditionals. Accordingly, by her own submissions, Plaintiff is ultimately entirely unsure of the expected costs of her damages related to the accident in question. These filings make clear there is a chance the only further treatment Plaintiff will need is a follow-up visit with an orthopedist, six weeks of physical therapy, and cortisone injections every three months "on an as needed basis" [Dkt. 18-1 at 4]—treatment that could potentially be completed within one year, and which would certainly cost exponentially less than $139,428.00. Moreover, there is nothing evidencing any need for lifelong care—particularly where there is a surgical option to treat this condition that is cheaper (and less time-intensive) than lifelong appointments of up to several times a month—making it difficult to understand why someone would not opt for surgery at some point sooner rather than later, given the many costs of the supposed alternative. Yet Plaintiff does not provide a dollar amount for any of the (seemingly much more likely) options for her shoulder care short of lifelong, constant treatment—ostensibly because they would be well below the $75,000 threshold.

In short, the "projections" on which Plaintiff's opposition relies are both unreliable and exceptionally speculative, causing her claims of this Court's jurisdiction to fall far short of the standard requiring allegations "with sufficient particularity[,] [of] facts indicating that it is *not* a legal certainty that the claim involves less than the jurisdictional amount.'" Abdel-Aleem, 665 F.3d at 42 (quoting Stewart, 356 F.3d at 338) (quoting Spielman, 251 F.3d at 5) (emphasis added). On the contrary, Plaintiff's opposition only seems to clarify the unlikelihood of her claims being valued at more than $75,000, particularly by, *inter alia*, stating her medical bills to date have been only $9,811.53 [Dkt. 18 at 3], and making clear that she has not even sought follow-up treatment upon her relocation to Florida [Dkt. 18-1 at 3].

Finally, despite the Court's ability to consider "extra-pleading materials . . . to resolve factual disputes concerning the existence of jurisdiction" Mahoney v. Colvin, 2016 WL 8839010, at *2 (citing Aversa, 99 F.3d at 1210), it is worth noting that none of Plaintiff's submissions with her opposition filing consisted of either amendments to the pleadings, sworn-to affidavits, or discovery responses. Instead, they are essentially letters from one doctor and one nurse to an attorney, not under oath, and with no amended complaint incorporating them. This distinction is important, given the degree to which the Court is able to consider extra-pleading materials at this stage, and further decreases the evidentiary weight any of these documents may be when evaluated for jurisdictional purposes. Plaintiff had ample opportunity and notice to provide documents or amended pleadings in which to substantiate her claims of federal jurisdiction with a particularized factual basis; yet she has failed to do so here, requiring dismissal of this matter. See Abdel-Aleem, 665 F.3d at 42. (quoting Diefenthal v. Civil Aeronautics Bd., 681 F.2d 1039, 1053 (5th Cir.1982) (where "party invoking the court's jurisdiction" was "put on notice ... by [the defendant's] motion to dismiss for lack of jurisdiction, that they needed to show some basis for the amount of damages they claimed," failure to do so resulted in proper dismissal by the district court)).

### III. CONCLUSION

Despite generally giving deference to the plaintiff with regard to pleading the amount in controversy, see, e.g., CE Design, 755 F.3d at 43; Abdel-Aleem, 665 F.3d at 41, the prerequisites for diversity jurisdiction nonetheless require an amount in controversy that is $75,000 or over— not an amount that *might* be $75,000 or over, depending on any number of possibilities and circumstances that have yet to unfold in the future.

To reject this well-established standard would essentially be to jettison the congressional mandate of 28 U.S.C. § 1332, by accepting any argument for potential future loss, no matter how attenuated, uncertain, or far in the future. It would invite a deluge of litigation of state law claims into the federal courts—something both our constitution and subsequent federal statutes have consistently and expressly sought to avoid.

For the reasons set forth above, the Court **GRANTS** Defendants' Motion to Dismiss [Dkt. 10] and orders that this action be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**SO ORDERED.**

July 15, 2022                                                                                          /s/ Angel Kelley
                                                                                                      ANGEL KELLEY
                                                                                                      U.S. DISTRICT JUDGE